**NOT FOR PUBLICATION**

FILED

**UNITED STATES COURT OF APPEALS**

APR 28 2025

**FOR THE NINTH CIRCUIT**

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-1823 |
| Plaintiff - Appellee, | D.C. No.<br>3:22-CR-02856-RSH-1 |
| v. | |
| JACQUELINE MADUENO, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Robert S. Huie, District Judge, Presiding

Argued and Submitted March 27, 2025
Pasadena, California

Before: BOGGS**, FRIEDLAND, and BRESS, Circuit Judges.

Jacqueline Madueno, convicted after a conditional guilty plea of possession

of cocaine and methamphetamine with intent to distribute, in violation of 21 U.S.C.

§ 841(a)(1), appeals the district court's denial of her motions to suppress (1) drugs

found in her car, as fruits of an unconstitutional stop, and (2) her post-arrest

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Danny J. Boggs, United States Circuit Judge for the
U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

statements, as having followed her invocation of the right to counsel. We have jurisdiction under 28 U.S.C. § 1291. We affirm the first denial, reverse the second, and remand with instructions to permit her to withdraw her guilty plea.

"We review de novo the denial of a motion to suppress," and we review any underlying factual findings for clear error. *United States v. Holmes*, 121 F.4th 727, 734 (9th Cir. 2024).

1. Because Customs and Border Protection ("CBP") Agent Contreras had reasonable suspicion for stopping Madueno's car, we affirm the district court's decision not to suppress the fruits of the search.

*First*, the district court correctly held that the collective-knowledge doctrine does not apply, which the government does not dispute. There is no evidence that Contreras and CBP analyst Smith had ever directly communicated before Contreras stopped Madueno. And Smith's general "be on the lookout" notice ("BOLO") did not direct or request that Contreras conduct a stop. The collective-knowledge doctrine also does not apply to the computer-generated high-risk-of-smuggling BOLO from CBP.

*Second*, though Smith's knowledge cannot be imputed to Contreras, Smith's BOLO "trigger[ed] an investigation that uncover[ed] facts that establish[ed] reasonable suspicion." *United States v. Thomas*, 211 F.3d 1186, 1192 (9th Cir. 2000). For the purpose of our analysis, the BOLO itself led only to Contreras

noticing Madueno's car and deciding to observe it. Madueno's counsel at oral argument disclaimed the "noticing" of Madueno's car as an independent Fourth Amendment violation.

*Third*, Contreras had reasonable suspicion by the time he stopped Madueno's car. "Officers on roving border patrols . . . may conduct 'brief investigatory stops' without violating the Fourth Amendment 'if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot.'" *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). Reasonable suspicion requires "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Ibid.* (quoting *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (en banc)). In reviewing an officer's reasonable suspicion, we evaluate the totality of the circumstances, which may include the "characteristics of the area, proximity to the border, usual patterns of traffic and time of day, previous alien or drug smuggling in the area, behavior of the driver, appearance or behavior of passengers, and the model and appearance of the vehicle." *Id.* at 1079. And we must "defer to the inferences drawn by . . . officers on the scene" based on "their own experience and specialized training." *Id.* at 1077–78 (quoting *Arvizu*, 534 U.S. at 273).

We conclude that Contreras had a particularized and objective suspicion that

Madueno was engaged in criminal activity based on his own observations. Contreras is a Border Patrol agent with over two decades of experience. After performing his own record checks, Contreras saw that Madueno had a history of crossing the border more than once a month. Contreras then followed Madueno's car and noticed that "the back of the vehicle was bouncing," which Contreras inferred, based on his experience, could be caused by smuggling people in the back. Contreras also observed Madueno's unusual driving behavior, which included at least two unnecessary lane changes, a potentially meant-to-evade-tail exit signal, and rumble-strip drifting in the middle of the day. Therefore, considering Contreras's experience and reasonable inferences, the totality of the circumstances shows that he had a particularized and objective basis for suspecting Madueno of criminal activity, and thus reasonable suspicion for the stop.

2. Because Madueno invoked and never waived her right to counsel, we reverse the district court's denial of her motion to suppress her post-arrest statements.

When an accused asserts the right to counsel, "the interrogation must cease until an attorney is present." *Miranda v. Arizona*, 384 U.S. 436, 474 (1966). This rule leads to two inquiries: (1) "whether the accused actually invoked [her] right to counsel," and (2) if so, whether she then "(a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right [she] had invoked."

*Smith v. Illinois*, 469 U.S. 91, 95 (1984).

*First*, Madueno invoked her right to counsel. A request for counsel must be unambiguous and unequivocal, and it must be presented "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Tobias v. Arteaga*, 996 F.3d 571, 580 (9th Cir. 2021) (quoting *Davis v. United States*, 512 U.S. 452, 459 (1994)). In *Tobias*, we held that the statement "Could I have an attorney?" was "an unequivocal invocation of [the] right to counsel under clearly established law." *Ibid.* We also held that there is no difference between "Can I" and "Could I" because they "are both well understood ways of asking a direct question." *Ibid.* We conclude, based on our consideration of the above factors and review of the post-arrest interview video, that Madueno's question—"Mm, can I have an attorney?"—was an invocation under *Tobias*.

*Second*, Madueno never waived her right to counsel. Waiver can only be established if "the accused [herself] initiates further communication . . . with the police," and it is not enough that the accused simply "responded to further *police-initiated* custodial interrogation." *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981) (emphasis added). Here, (1) Madueno invoked her right to counsel, (2) the officers continued to ask her if she wanted an attorney (not at her suggestion or request for clarification, because she had already said she did), (3) the officers told Madueno that they wanted to ask her questions and readvised her of her *Miranda*

rights, and (4) Madueno only then signed the *Miranda* waiver. Madueno did not initiate a new discussion with police, but rather merely responded to their continued questions after she invoked her right to counsel. This does not suffice to show a subsequent waiver of her right to counsel.

3. We remand with instructions that Madueno's post-arrest statements should have been suppressed and that the district court should allow Madueno to withdraw her plea. When an appeal follows a conditional plea, like the one here, an error is considered harmless "[i]f it is beyond a reasonable doubt that the error did not contribute to the decision to plead guilty." *United States v. Lustig*, 830 F.3d 1075, 1091 (9th Cir. 2016). But in all other cases, "the error will require a remand to provide an opportunity for the defendant to vacate the guilty plea." *Ibid.* The Government provides no evidence suggesting that the erroneous suppression ruling was immaterial to Madueno's decision to plead guilty, so we find that the error was not harmless.

**AFFIRMED** with regard to the motion to suppress the drug evidence, **REVERSED** with regard to the motion to suppress Madueno's post-arrest statements, and **REMANDED** with instructions to allow the withdrawal of Madueno's conditional guilty plea.

24-1823